CITY OF AURORA, a municipal corporation, and Steven L. Lines, Petitioners,

v.

Hazel Kay LOVELESS, widow of Benjamin L. Loveless, Respondent.

No. 79SC392.

Supreme Court of Colorado, En Banc.

Dec. 28, 1981.

Rehearing Denied Feb. 8, 1982.

Wood, Ris & Hames, P. C., F. Michael Ludwig, Denver, for petitioners.

George Hinshaw and Morton L. Davis, Aurora, for respondent.

ROVIRA, Justice.

The respondent, Hazel Loveless, brought an action in the District Court of Arapahoe County seeking damages for the wrongful death of her husband, Benjamin Loveless

(decedent). A jury of six returned a special verdict in favor of the petitioners, City of Aurora (City) and Steven Lines (Lines), a police officer employed by the City, finding that although Lines was negligent his negligence was not a proximate cause of death. In *Loveless v. City of Aurora*, Colo.App., 639 P.2d 1084 (1979), the court of appeals, finding that the two questions on the special verdict form relating to Lines' conduct were answered in an internally inconsistent manner, reversed the judgment and ordered a new trial. It also ordered certain exhibits to be admitted if offered on retrial. We granted certiorari and now reverse.

### I.

On November 19, 1974, the decedent told his wife that he wasn't going to go to work; instead, he got a bottle of brandy and proceeded to become intoxicated. His wife testified that he appeared to be disoriented and depressed. She called some friends in order to get help, but finally left and called the Aurora Police Department from a neighbor's house across the street.

In response to the call, Officers Lines and Winger were dispatched to the Loveless residence. Upon their arrival, bystanders informed them that shots had been fired from the house. Immediately thereafter, a shotgun blast from within broke out the front window of the Loveless home; and while the officers approached the house, another shot was fired.

At this point, Lines ran into the house, assumed a crouching position with his revolver drawn and shouted, "Police, drop it!" Instead of complying with the order, the decedent closed the action on his shotgun, turned, and advanced toward Lines with the gun pointed at the officer's midsection. Lines pulled the trigger of his revolver, but the weapon misfired. He again ordered the decedent to "drop it," but the decedent continued to approach. Lines was able to push the barrel of the shotgun aside just as

it was fired. Immediately thereafter, Lines fired his revolver into the decedent's chest; and, as a result, the decedent died. Witnesses estimated that the entire sequence of events lasted less than thirty seconds.

The decedent's surviving spouse brought a wrongful death action against Lines and the City, alleging negligence on the part of each and *respondeat superior* liability on the part of the city for the actions of Lines.

Pursuant to a special verdict form,[1] the jury found that (1) Lines acted negligently, (2) his negligence was not a proximate cause of the damages claimed by the plaintiff (respondent), (3) the decedent was contributorily negligent, and (4) the decedent's contributory negligence was a proximate cause of the plaintiff's (respondent's) claimed damages. The jury, applying the instructions given to it, did not determine the amount of damages or apportion negligence pursuant to the comparative negligence statute because of its finding that Lines' negligence was not a proximate cause of death.

The court of appeals reversed and remanded for a new trial. It held that although it was "difficult to ascertain the conduct of the police officer that could be characterized by the jury as negligent," the determination of negligence was for the jury and would not be disturbed on appellate review. However, it was unable to harmonize the jury's finding of Lines' negligence with its finding that his negligence was not a proximate cause of death. It reasoned that Lines' acts, without any intervening cause, resulted in the decedent's being shot; and although the decedent's acts contributed to his death, they could not be said to be such an intervening cause as to constitute the sole proximate cause of his death. It further instructed the trial court not to exclude certain police department regulations in the new trial if the respondent sought to enter these regulations into evidence.

---

1. The court gave the jury the comparative negligence special verdict form, C.J.I.–Civ.2d 9:36 (1976). The only objection made by the respondent to the use of the form related to his argument that the court should find the defendants negligent as a matter of law, that there was no evidence of the decedent's contributory negligence, and that the only issue to be submitted to the jury was one of damages.

## II.

The petitioners argue that the court of appeals erred in holding that the special verdict of the jury was internally inconsistent. We agree.

■ Jury verdicts will not be reversed for inconsistency if a reading of the record reveals any basis for the verdicts. Our task is to examine the record and determine whether there was competent evidence from which the jury could have logically reached the verdict in this case. Furthermore, if under the evidence adduced in this case there is "a view of the case which makes the jury's answers ... consistent," we must adopt that view. 5A *J. Moore, Federal Practice* ¶ 49.03[4] at 49–29 (2d ed. 1980).[2]

■ This challenge focuses upon two findings in the special verdict form returned by the jury. The first finding was that Lines was negligent. The second was that the negligence was not a proximate cause of the respondent's damages. We begin by noting that the special verdicts are not inconsistent on their face. In Colorado a finding of negligence does not create liability on the part of a defendant unless that negligence is a proximate cause of the plaintiff's injury. *Safeway Stores, Inc. v. Langdon*, 187 Colo. 425, 532 P.2d 337 (1975); *Roberts v. Fisher*, 169 Colo. 288, 455 P.2d 871 (1969); *Kent Mfg. Co. v. Zimmerman*, 48 Colo. 388, 110 P. 187 (1910). Further, questions of negligence and proximate cause are issues of fact to be determined by the jury, and the appellate courts are bound by the jury's findings when there is competent evidence in the record supporting those findings. *See Vigil v. Pine*, 176 Colo. 384, 490 P.2d 934 (1971); *Pioneer Const. Co. v. Richardson*, 176 Colo. 254, 490 P.2d 71 (1971).

In the present case the jury was instructed that negligence means: "a failure to do an act which a reasonably prudent person would do, or the doing of an act which a reasonably prudent person would not do, under the same or similar circumstances to protect others from bodily injury or death." Further, it was instructed that proximate cause means "that cause which in natural and probable sequence produced the claimed injury. It is the cause without which the claimed injury would not have been sustained."

The court of appeals assumed the jury's finding of Lines' negligence was based solely on his "breaking into the home and not waiting for assistance." As a result of that assumption as to the jury's thought processes, it found it impossible to harmonize the jury's finding of negligence with the finding that the negligence was not a proximate cause of the respondent's damages.

An appellate court has a duty to attempt to reconcile the jury's answers to special verdicts if it is at all possible. *See Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *Meinke v. Lewandowski*, 306 Minn. 406, 237 N.W.2d 387 (1975). "Where there is a view of the case that makes the jury's answers ... consistent, they must be resolved that way." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 807 (1962).

■ The jury heard substantial testimony concerning the shooting and the events leading up to it. The negligence instruction was general and was in no way specifically tied to any particular sequence of events. Therefore, we are not prepared to say that the jury's answer in the first special verdict was based solely on Lines' breaking into the Loveless home and not waiting for assistance. In applying the instructions on negligence and proximate cause to the evidence adduced in this case, the jury could have found Lines negligent because he failed to reasonably protect bystanders from injury which might have been inflicted by the

2. Moore cites cases which analyze the problem in the context of Fed.R.Civ.P. 49(a). The federal rule is identical to C.R.C.P. 49(a) concerning special verdicts and interrogatories. The analysis in the federal cases is based upon *U.S. Const.* amend. VII, which does not apply here. However, consideration of the respective roles of a jury and court requires the same result here.

decedent, or that he should have waited a longer time before going into the house, or that he should have used some other method of limiting the danger inherent in the decedent's conduct. We recognize that the thrust of the respondent's complaint was that the police officer was negligent in confronting the decedent and shooting him; nonetheless, it is conceivable that the jury applied the negligence instruction to a sequence of events distinct and unrelated to the eventual shooting. Given this possibility, the jury's findings that Lines was negligent but that his negligence was not a proximate cause of respondent's damages were not inconsistent and are supported by the evidence. *Vigil v. Pine, supra.*

### III.

Petitioner contends that the trial court correctly refused to admit certain exhibits offered by the respondent at trial. These exhibits were regulations of the Aurora Police Department concerning the procedure to be implemented by a Special Weapons and Tactics (S.W.A.T.) team in situations where a sniper or barricaded suspect presents an extreme danger to officers and other persons. The court of appeals ruled that the exhibits, if offered, should be admitted on retrial and instructions relating to them should be given.

At trial, the respondent called the chief of the Aurora Police Department in order to lay a foundation for the admission of this evidence. The chief testified that the regulations applied to procedures to be employed by the S.W.A.T. team when they are faced with a sniper or barricaded suspect. He further testified that the decision to dispatch a S.W.A.T. team was initially to be made by the officer on the scene. Here, no S.W.A.T. team was dispatched, and the judge ruled that the procedures governing the S.W.A.T. team were not relevant.

However, the respondent was able to present evidence concerning the proper procedure to be followed by a police officer under the circumstances, and the court explicitly ruled that the inadmissibility of the S.W.A.T. team procedures would not interfere with respondent's theory that the po-

lice officer did not use reasonable care under the circumstances.

The court of appeals relied upon the case of *DeLong v. City & County of Denver*, 34 Colo.App. 330, 530 P.2d 1308 (1974), aff'd, 190 Colo. 219, 545 P.2d 154 (1976), in support of its ruling. In *DeLong*, however, the court was ruling on the admissibility of police safety rules and regulations pertaining to the operation of all police vehicles. This rule provided that at no time when answering fire calls will an officer proceed through a red signal light in excess of fifteen miles per hour. The accident in *De-Long* occurred when the police vehicle, in answer to a fire call, ran through a red signal light at a speed in excess of fifteen miles an hour. Therefore, the court correctly ruled that the regulation was admissible as evidence of the standard of due care.

■ The present case is distinguishable, however, because, here, the regulation applies to S.W.A.T. teams; and it is clear that no S.W.A.T. team was dispatched. The trial court correctly ruled that the regulation was not relevant. Furthermore, the respondent was in no way limited in her attempt to prove that the police officer acted unreasonably under the circumstances, and she was able to elicit testimony concerning what factors the police officer should consider when presented with a situation such as existed here.

The judgment of the court of appeals is reversed.

ERICKSON, J., does not participate.

QUINN, J., dissents.

QUINN, Justice, dissenting:

I respectfully dissent. The jury's special findings that Officer Lines was negligent and that his negligence was *not a proximate cause* of the plaintiff's damages cannot be reconciled with the evidentiary state of the record and are logically inconsistent.

The complaint alleged that Officer Lines, knowing that the plaintiff's husband was in possession of and had discharged a firearm,

thereafter negligently confronted the husband at the family home and, as a direct and proximate result of that confrontation, shot and killed the husband. The case was tried to the jury on this theory of negligence and no other. If the jury's special finding of negligence means anything, it means that the jury was satisfied by a preponderance of the evidence that Officer Lines failed to use reasonable care in confronting the decedent at his home. To attribute to the jury's special finding some other basis of negligence, as a majority does, is to engage in utter speculation.

Given the jury's finding of negligence, its additional finding that the defendant's negligence was not a proximate cause of the plaintiff's damages is irreconcilable with the undisputed evidence. A proximate cause need not be the sole cause producing the claimed injury. *E.g., Redman & Scripp, Inc., v. Douglas,* 170 Colo. 208, 460 P.2d 231 (1969); *Colorado Springs and Interurban Railway Co. v. Allen,* 55 Colo. 391, 135 P. 790 (1913). A proximate cause, as applicable to this case, means a cause which, in natural and probable sequence, produced the claimed injury and without which the claimed injury would not have been sustained. C.J.I. (Civil) 9:26 (1st ed. 1976 Supp.). In other words, the defendant's contributory act need only be so directly connected with the injury that, but for such act, the injury would not have occurred. *E.g., Colorado Springs and Interurban Railway Co. v. Allen, supra,* 55 Colo. at 395, 135 P. at 792.

The only legal basis to support the jury's special finding on proximate causation is the principle of intervening cause. *See, e.g., Calkins v. Albi,* 163 Colo. 370, 431 P.2d 17 (1967); *Albo v. Shamrock Oil and Gas Corp., et al.,* 160 Colo. 144, 415 P.2d 536 (1966). However, in this case the evidence was uncontradicted that the decedent was shot and killed by Officer Lines. There was no evidence of an unforeseen intervening cause which might have relieved the defendant of liability; nor was the jury instructed on intervening cause. If, for example, there had been evidence that the decedent killed himself by turning his own weapon on himself during the confrontation

with Officer Lines, then the jury's special findings would be reconcilable with the evidentiary state of the record. In the absence of any evidence on intervening cause, no such reconciliation is possible. A verdict which cannot be reconciled with the evidence is logically inconsistent and should not be permitted to stand. *See, e.g., Kistler v. Halsey,* 173 Colo. 540, 481 P.2d 722 (1971); *Redman and Scripp, Inc. v. Douglas, supra.*

I agree with the analysis of the Court of Appeals and I would reverse the judgment and remand for a new trial.